# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

In Re:

WING FOODS, INC.,

        **Debtor.**

**Bankruptcy Case
No. 09-40154-JDP**

_____

BANKRUPTCY ESTATE OF
WING FOODS, INC., by and
through its Chapter 7
Trustee, Gary L. Rainsdon

        **Plaintiff,**

**vs.**

CCF LEASING COMPANY
and B S & R EQUIPMENT
COMPANY,

        **Defendants.**

**Adv. Proceeding No. 09-08062**

_____

## MEMORANDUM OF DECISION
_____

MEMORANDUM OF DECISION - 1

**Appearances:**

Gary L. Rainsdon, Twin Falls, Idaho, Chapter 7 Trustee.[1]

John Peterson, PETERSON LAW OFFICE, Twin Falls, Idaho,
Attorneys for Defendants.

### Introduction

Before the Court are cross motions for summary judgment in this

adversary proceeding.  A hearing was conducted on the motions on

November 4, 2009, and the Court took the issues under advisement.

Having considered the submissions of the parties, the arguments of

counsel, as well as the applicable law, this Memorandum disposes of the

motions.  Fed. R. Bankr. P. 7052; 9014.[2]

--------

[1] Mr Rainsdon is not an attorney and represented himself in this action.
As will be seen below, the applicable legal analysis to resolve the issues in this
action are complex.  While the Court has endeavored to give full credit to Mr.
Rainsdon's arguments and positions, some were difficult to follow, and he (and
potentially the bankruptcy estate) may have benefitted from having counsel to
advise him.   Indeed, one question that an attorney may have answered if asked
by Mr. Rainsdon is whether prudence dictated this action be pursued at all.

[2] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 2

*Undisputed Facts*

The issues arise out of the chapter 7 bankruptcy case of the

corporation, Wing Foods, Inc. ("Debtor"), filed on February 12, 2009.

About a year prior to filing, on February 28, 2008, Debtor entered into an

agreement with CCF Leasing Co. ("CCF") to "lease" certain restaurant

equipment (the "Agreement").  Docket No. 18, Ex. B.  The equipment

supplier was BS&R Design & Supplies ("BS&R"; "Defendants" when

referring to BS&R and CCF collectively).  *Id*.  On March 20, 2008, CCF filed

a UCC-1 financing statement with the Idaho Secretary of State concerning

the transaction.[3]  Docket No. 18, Ex. C.  While the form required that the

debtor's "Exact Full Legal Name" be listed,  the name shown on the

financing statement was "Wing Fine Food".  *Id*.  It is undisputed that

Debtor's correct name is "Wing Foods, Inc."  Docket No. 18, Ex. F.

Debtor's business failed and it was unable to make the payments

required by the Agreement.  Debtor filed for bankruptcy relief and

---

[3]  A prior financing statement had been filed in 2006 with the name Wing
Foods, Inc.  Docket No. 18, Ex. A.  The parties were aware of that 2006 financing
statement, but it has no bearing on this issues presented here.

MEMORANDUM OF DECISION - 3

Plaintiff Gary L. Rainsdon was appointed as to serve as chapter 7 trustee .

While it was in business, Debtor leased its restaurant premises from
Robert Korb ("Korb").  At the time of the bankruptcy filing, a number of
pieces of equipment remained at the business premises.  Both for the sake
of Debtor's estate and to enable Korb to re-lease the premises, Plaintiff and
Korb entered into a Sales Agreement on May 19, 2009.  It provided that
Plaintiff as trustee would sell to Korb "all interests of the bankruptcy
estate in and to:  All property remaining at the former business location of
Wing Foods, Inc."  Docket No. 18, Ex. E.  To implement this deal, on May
21, 2009, Plaintiff filed a Notice of Sale by Trustee in the bankruptcy case in
which he proposed a private sale of  "all the bankruptcy estate's interest in
and to the following:  All property remaining at the former business
location of Wing Foods, Inc.".  BK Docket No. 17.[4]  The notice indicated
that the buyer in this proposed private sale was Korb, and that "all valid
liens remain in place".  *Id*.  If there were no objections, the notice advised

---

[4] When referencing the main bankruptcy case docket, the Court will use
the designation "BK Docket".

MEMORANDUM OF DECISION - 4

that the sale would occur on June 11, 2009. *Id*.

CCF objected to the proposed sale as to any equipment still remaining at Debtor's former business location that was subject to the Agreement between CCF and Debtor. BK Docket No. 20.[5] According to the Agreement, the following items of property were included in the lease transaction:

> BSR Inv SI 002832-(1) TSSU-48-12 SAN/SAL UNIT-48" 12 PAN TRUE.
> BSR Inv SI 44133- (1) SP30 MIXER GLOBE 30QT
> BSR Inv# 64192 - E304SW Warmer 4 hole Duke 240 volt
> BSR Inv # 63406 – 8x8 Arctic 3000 Walk-in Freezer
> BSR Inv # 63715 – 1 ea John Boos table #SNS11 w/ 2 drawers
>                 - 1 ea John Boos Table #SMS01 w/1 drawer

Docket No. 18, Ex. B. It appears that only the walk-in freezer, the 30-quart mixer, and the True San/Sal Unit – 48" 12 Pan (referred to by the parties as the "refrigerated counter model") (collectively, the "Disputed Property") were located on the Debtor's former business premises at the time of the proposed sale. Docket No. 18, Ex. D.

------

[5]   On June 25, 2009, Debtor also filed an objection to the sale, but not until after the sale was final. As a result, it was deemed withdrawn. BK Docket Nos. 29, 30. It was doubtful Debtor had any standing to object to the sale.

MEMORANDUM OF DECISION - 5

Behind the scenes, to facilitate the completion of Plaintiff's sale so that Korb could re-lease the property, Korb and CCF struck a separate agreement by which Korb sold his interest in the Disputed Property to CCF, and as at least part of the consideration for the deal, CCF withdrew its objection to Plaintiff's sale on June 19, 2009.  BK Docket No. 28.

Plaintiff's sale was concluded, and Plaintiff filed a Report of Sale by Trustee on July 1, 2009.  BK Docket No. 31.  In the report, Plaintiff indicated that he had sold the "estate's interest in:  All property remaining at the former business location of Wing Foods, Inc." to Korb for $5,000.  *Id*.

On August 17, 2009, Plaintiff, acting *pro se*, commenced this adversary proceeding against Defendants[6] in which he alleged: (1) that the Agreement between CCF and Debtor was not a true lease, but rather constituted a disguised secured sale transaction under Idaho Code § 28-1-203; (2) that any security interest created by the Agreement in favor of CCF

---

[6] It is unclear why Plaintiff named BS&R as a Defendant.  The record indicates only that BS&R supplied the equipment "leased" pursuant to the Agreement.  BS&R appears to have had no direct dealing with Debtor or Plaintiff in any fashion, and thus its inclusion in this adversary proceeding appears unnecessary.

MEMORANDUM OF DECISION - 6

could be avoided by Plaintiff pursuant to § 544(a), that the property

subject to the Agreement could be recovered by Plaintiff  under § 550(a),

and that CCF's interest in that property could be preserved for the benefit

of the bankruptcy estate under § 551; and (3) that the Defendants' claims

as creditors in the bankruptcy case must be disallowed until they paid to

the estate an amount equal to the aggregate amount of the transfers,

pursuant to § 502(d).  Docket No. 1.

Defendants filed an answer to Plaintiff's complaint, followed shortly

by a motion and amended motion for summary judgment.  Docket Nos. 7,

10, 11, 13.   Plaintiff then filed his cross motion for summary judgment.

Docket No. 15.

### *Summary Judgment Standard*

Summary judgment is properly granted when "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is

MEMORANDUM OF DECISION - 7

entitled to judgment as a matter of law."  Civil Rule 56(c)[7]; *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008); *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).  In resolving a summary judgment motion, the Court does not weigh evidence, but, rather, determines only whether a material factual dispute remains for trial.  *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)).  In making this determination, the Court views the evidence in the light most favorable to the nonmoving party.  *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).  In addition, all justifiable inferences are to be drawn in favor of the nonmoving party.  *Id*.

The initial burden of showing there is no genuine issue of material fact rests on the moving party.  *Esposito v. Noyes (In re Lake Country Invs.)*,

---

[7]  The Federal Rules of Civil Procedure are referred to as "Civil Rules."  Civil Rule 56 is made applicable in adversary proceedings by Rule 7056.  Civil Rule 56 was amended, effective December 1, 2009.  The quoted text is now codified at (c)(2) of the rule.

MEMORANDUM OF DECISION - 8

255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). When cross motions for summary judgment are filed, the Court must consider each motion independently, construing all reasonable inferences in the nonmoving party's favor. *Baldwin v. Trailer Inns, Inc.,* 266 F.3d 1104, 1117 (9th Cir. 2001).

### *Analysis and Disposition*

The parties' arguments are fairly straightforward. Plaintiff alleges that the Agreement between CCF and Debtor was not a true lease, but rather a disguised secured sale. Furthermore, Plaintiff argues that the UCC-1 filed by CCF to perfect its security interest under the Agreement was defective, therefore he may avoid that security interest, preserve it for the estate, and, presumably, sell the collateral and retain the proceeds for the bankruptcy estate.

CCF argues that the Agreement was a lease, and thus it owned the Disputed Property. In the alternative, CCF contends that even if the lease is deemed to have been a disguised sale, and even if its security interest in the goods was avoidable, it purchased the Disputed Property from Korb

MEMORANDUM OF DECISION - 9

after he bought all of the bankruptcy estate's interest in the Disputed

Property from Plaintiff.  Thus, CCF argues Plaintiff no longer has an

avoidance claim to assert against CCF.

Plaintiff, in response to the Defendants' alternative argument,

maintains that he never sold any of the Disputed Property to Korb in the

first place, and thus Korb could not have subsequently sold it to CCF.   As

a result, he alleges, the Disputed Property remains property of the

bankruptcy estate that he may sell free and clear of CCF's avoidable

security interest.

These arguments present a variety of issues for resolution by the

Court.  However, it appears that none of the arguments raise issues of

disputed fact, and so the Court's responsibility here is to determine only

the legal rules implicated, and the results from application of those rules.

### I.  The Agreement was a Sale, Not a Lease.

The first question for resolution by the Court is whether any of the

items of Disputed Property were part of the bankruptcy estate such that

Plaintiff had the right to sell them to Korb.  If the Agreement was a lease,

MEMORANDUM OF DECISION - 10

the Disputed Property was and is owned by CCF, not the bankruptcy

estate.

   According to Debtor, its deal with CCF was a lease.  In particular,

Debtor's Schedule G lists a lease with CCF, as follows:

> Equipment lease
> Arctic [sic] walk-in freezer 8'x8'
> 24 month lease/collateralized equipment
> Lease#WIN089/monthly
> Expires: 2/28/10

BK Docket No. 1.[8]

   The Agreement characterizes the transaction as a lease that  "shall

commence upon Lessee's acceptance of the Equipment . . . , [and shall]

terminate upon expiration of the number of months (following the date of

acceptance) set forth in 'Terms' above."  BK Docket No. 22, Ex. A.  The

"Terms" provision in the Agreement establishes a 24-month lease term,

and requires Debtor to make monthly payments of $601 to CCF.  *Id*.

Finally, the Agreement contains a "Buy Option" which allowed Debtor to

---

  [8]  Debtor's schedules list only the walk-in freezer as being subject to a
lease.  BK Docket No. 1.

MEMORANDUM OF DECISION - 11

purchase the equipment at its conclusion for "one dollar buyout with no prepayment penalty." *Id*.

In determining whether the Agreement is a lease or a conditional sale, Idaho Code § 28-1-203 controls.  It provides, in pertinent part:

> (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
> . . . .
>
> (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

Idaho Code § 28-1-203.

Because of the terms of the Agreement, there is no dispute concerning material facts, and the Court concludes that the Agreement was not a true lease.  Idaho courts have held that in determining whether a lease is a true lease or a disguised security agreement,

An important factor is the effect of any purchase

MEMORANDUM OF DECISION - 12

> option contained in the agreement.  A relevant
> inquiry is whether provisions enable the "lessee"
> to acquire a substantial equity in the property
> either during the term or at its end by allowing
> transfer of ownership for nominal consideration
> in addition to rental paid.

*Excel Leasing Co. v. Christensen*, 769 P.2d 585, 587 (Idaho App. 1989)[9]; *see*

*also W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 653 P.2d 791, 795 (Idaho 1982)

(although lease contained some attributes of an installment sales contract,

"there was no oral or written option to purchase the equipment, and title

did not pass to the lessee at the end of the term," thus court found

agreement was a lease); *Whitworth v. Krueger*, 558 P.2d 1026, 1030 (Idaho

1976) (option to purchase at expiration of the lease for nominal

---

[9]    *Excel Leasing* was based on a prior statute, Idaho Code § 28-1-201(37),
which was substantively included when Idaho Code § 28-1-203 was amended.
The prior statute read, in pertinent part:

> Whether a lease is intended as security is to be
> determined by the facts of each case; however, (a) the
> inclusion of an option to purchase does not of itself
> make the lease one intended for security, and (b) an
> agreement that upon compliance with the terms of the
> lease the lessee shall become or has the option to
> become the owner of the property for no additional
> consideration or for a nominal consideration does
> make the lease one intended for security.

MEMORANDUM OF DECISION - 13

consideration rendered the lease a security interest).

The Agreement requires Debtor to pay CCF monthly payments for the full term of the lease, and may not be terminated earlier by Debtor. The Agreement also gives Debtor the right to buy the goods at the conclusion of its term by payment of the nominal amount of one dollar. The Idaho statutes and pertinent case law require nothing more to deem this transaction a sale rather than a lease.

As a result, then, CCF's interest in the Disputed Property was limited to a security interest; it was not the owner of those items. Because the Agreement contemplated a sale, not a lease, Debtor's interest in the Disputed Property became property of its bankruptcy estate, since that estate included "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Debtor's rights in the Disputed Property created by the Agreement vested in the bankruptcy estate when Debtor filed for bankruptcy. Plaintiff is entitled to summary judgment on this issue; Defendant's summary judgment motion on this issue will be denied.

MEMORANDUM OF DECISION - 14

## II.  Lien Avoidance.

Having concluded that the Agreement granted CCF a security

interest, Plaintiff is entitled to determine whether that security interest

may be avoided, and thus whether CCF has a right, as a secured creditor,

to any portion of the $5,000 proceeds from the sale of the Disputed

Property to Korb.  The Court concludes, as a matter of law, that the UCC-1

financing statement was fatally flawed, and thus CCF's security interest

may be avoided using Plaintiff's strong-arm powers under § 544(a).

To perfect a security interest in goods, a financing statement must be

filed with the Idaho Secretary of State.  Idaho Code § 28-9-310(a).  Idaho

law requires the financing statement to state the name of the debtor, the

name of the secured party or its representative, and to describe the

collateral covered by the financing statement.  Idaho Code § 28-9-502(a).

As to the name of the debtor to be used in a financing statement, the

statutes specify:

> A financing statement sufficiently provides the
> name of the debtor:  (1) If the debtor is a
> registered organization, only if the financing

MEMORANDUM OF DECISION - 15

> statement provides the name of the debtor
> indicated on the public record of the debtor's
> jurisdiction of organization which shows the
> debtor to have been organized[.]

Idaho Code § 28-9-503.  The Official Comment to this section provides:

> The requirement that a financing statement
> provide the debtor's name is particularly
> important.  Financing statements are indexed
> under the name of the debtor, and those who
> wish to find financing statements search for them
> under the debtor's name.

*Id*.

Here, CCF properly filed a financing statement to perfect its security

interest, but it listed Debtor's name as "Wing Fine Food", rather than Wing

Foods, Inc.  Docket No. 18, Ex. C.  A financing statement may contain

minor errors and omissions, so long as they do not render the financing

statement seriously misleading.  Idaho Code § 28-9-506(a).  More to the

point, Idaho Code § 28-9-506(b) provides that "a financing statement that

fails sufficiently to provide the name of the debtor in accordance with

section 28-9-503(a) is seriously misleading."

It is undisputed that both Plaintiff and Korb searched for a financing

MEMORANDUM OF DECISION - 16

statement that listed the debtor's name as "Wing Foods, Inc."   Neither

search revealed the critical financing statement dated March 20, 2008.

Because a search of the records would not lead to the discovery of the

financing statement in this case, the error in the name listed for the debtor

was seriously misleading and the UCC-1 was  ineffective to perfect CCF's

security interest.  *Hopkins v. NMTC Inc. (In re Fuell)*, 07.4 I.B.C.R. 95, 96

(Bankr. D. Idaho 2007).

Because CCF's security interest was unperfected as against a

hypothetical judgment lien creditor of Debtor on petition day, the status

occupied by a bankruptcy trustee, Plaintiff may avoid CCF's security

interest.  Plaintiff's motion for summary judgment concerning the lien

avoidance issue will be granted, and Defendant's motion will be denied.

### III.  Disallowance of CCF's Claim Pursuant to § 502(b).

Plaintiff's complaint also seeks an order disallowing CCF's

creditor's claim.  Section 502(d) provides:

> Notwithstanding subsections (a) and (b) of this
> section, the court shall disallow any claim of any
> entity from which property is recoverable under

MEMORANDUM OF DECISION - 17

> section 542, 543, 550, or 553 of this title or that is a
> transferee of a transfer avoidable under section
> 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of
> this title, unless such entity or transferee is liable
> under section 522(i), 542, 543, 550, or 553 of this
> title.

11 U.S.C. § 502(d).

Section 502(d) "disallows the claims of creditors who have received

avoidable transfers, unless the creditor relinquishes the transfer." *El Paso*

*City of Texas v. America West Airlines, Inc. (In re America West Airlines, Inc.)*,

217 F.3d 1161, 1163-64 (9th Cir. 2000).  That section "requires disallowance

of a claim of a transferee of a voidable transfer *in toto* if the transferee has

not paid the amount or turned over the property received as required

under the sections under which the transferee's liability arises."  4 COLLIER

ON BANKRUPTCY § 502.05 (Alan N. Resnick & Henry J. Sommer eds., 16th

ed.)  The section is intended to "have the coercive effect of ensuring

compliance with judicial orders."  *Campbell v. United States (In re Davis)*,

889 F.2d 658, 661 (5th Cir. 1989).

Here, the transfer Plaintiff avoided was the security interest granted

MEMORANDUM OF DECISION - 18

to CCF under the Agreement.  § 101(54)(A).  Once the CCF security

interest is avoided, the property subject to that lien would generally

remain a part of Debtor's bankruptcy estate until administered by Plaintiff.

However, in this case, CCF claims that it now owns the Disputed Property

outright, because it purchased the items from Korb after he bought them

from Plaintiff.

Whether CCF's claim as a creditor for amounts due under the

Agreement should be disallowed depends upon whether Plaintiff sold the

bankruptcy estate's interest in the Disputed Property to Korb.  If he did,

then CCF holds no property subject to avoidance by a trustee, and it may

participate as a creditor in distributions in the bankruptcy case.

A.  What Property Did Trustee Sell?

CCF contends that the Notice of Sale, the Sales Agreement between

Korb and Plaintiff, and the Report of Sale all expressly provide that

Plaintiff sold to Korb all of the estate's interest in all property remaining at

Debtor's former business premises, and because the Disputed Property

was located in those premises, it was included in the sale.

MEMORANDUM OF DECISION - 19

Plaintiff disagrees and asks the Court to look outside the four corners of the Sales Agreement to consider a stream of email communications between the parties purporting to limit the items being sold by Plaintiff to Korb.

### 1.  May the Court Consider Parol Evidence?

As a threshold matter, the Court must consider whether it may consider the extrinsic evidence submitted by Plaintiff.   The Plaintiff/Korb transaction involved a sale of goods as defined in Idaho Code §§ 28-2-105 and 106, which invokes the provisions of the Idaho Uniform Commercial Code.  As such, the Uniform Commercial Code provision on parol evidence is applicable to the transaction at issue.  It instructs that:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
> (a) By course of performance, course of dealing, or usage of trade (section 28-1-303); and

MEMORANDUM OF DECISION - 20

> (b) By evidence of consistent additional
> terms unless the court finds the writing to have
> been intended also as a complete and exclusive
> statement of the terms of the agreement.

Idaho Code § 28-2-202.  The Idaho Supreme Court has held that this

section of Idaho's Uniform Commercial Code,

> permits the introduction of parol evidence to
> explain or supplement through evidence of
> consistent additional terms, unless the court finds
> the writing was intended also as a complete and
> exclusive statement of the terms of the agreement
> (total integration).

*Anderson & Nafziger v. G.T. Newcomb, Inc.*, 595 P.2d 709, 713 (Idaho 1979).

Importantly, the court stated:

> that the determination under I.C. § 28-2-202 of
> whether a writing is a complete and exclusive
> statement of the terms of the agreement should
> not be confined to a simple scanning of what
> terms the writing embodies.  The trial court
> should consider not only the language of the
> agreement but all extrinsic evidence relevant to
> the issue of whether the parties intended the
> written agreement to be a complete integration.

*Anderson & Nafziger*, 595 P.2d at 714.

Under these statutes and decisions, then, the Court may consider the

MEMORANDUM OF DECISION - 21

email stream if two conditions are present:  first, the parties must not have

intended the Sales Agreement as a total integration, and second, any parol

evidence is limited to "consistent additional terms".

<u>a.  Integration</u>.

In this case, the parties have provided a written clue about whether

their contract was intended to be a total integration.  The Sales Agreement

provides that:

> This instrument, including any attached exhibits
> and addenda, constitutes the entire agreement of
> the parties.  No representations or promises have
> been made except those that are set out in this
> agreement.  This agreement may not be modified
> except in writing signed by all the parties.

Docket No. 18, Ex. E at ¶ 6.

The contract in *Anderson & Nafziger* similarly contained a merger

clause providing that the writing was intended to be a fully integrated

document.  The Idaho Supreme Court, in holding that the trial court

should consider not just the language of the agreement, but also all

extrinsic evidence on the issue of integration, stated that it did not intend

MEMORANDUM OF DECISION - 22

to deprive the merger clause of all effect.  Rather, its holding would "limit

the conclusiveness of such merger language.  The terms of the writing still

have superior probative value but are tempered by the trial court's ability

to consider extrinsic evidence of the parties' intentions."  *Anderson &*

*Nafziger*, 595 P.2d at 714.[10]  In determining whether Plaintiff and Korb

intended the Sales Agreement to be a "complete and exclusive statement

of the terms of the agreement," this Court is also mindful that Idaho Code

§ 28-2-202 was intended to "liberalize the parol evidence rule and to

abolish the presumption that a writing is a total integration."  *Borah v.*

*McCandless*, 205 P.3d 1209, 1217 (Idaho 2009) (dicta); *Anderson & Nafziger*,

595 P.2d at 714.

    Consistent with this approach, the Court will consider the extrinsic

evidence, to see whether the parties to the Sales Agreement intended its

---

    [10]  Treatment of merger clauses in sales agreements governed by the
Uniform Commercial Code differs from that under the common law applicable
to other types of contracts, in which the presence of a merger clause
"conclusively establishes that the agreement is integrated and therefore subject to
the parol evidence rule."  *Posey v. Ford Motor Credit Co.*, 111 P.3d 162, 165 (Idaho
Ct.  App. 2005).

MEMORANDUM OF DECISION - 23

terms to reflect their final agreement.

<u>(1).  Stream of Email</u>.

The Court has examined the various emails exchanged by the parties before Plaintiff entered into the Sales Agreement with Korb and filed the Notice of Sale, including those exchanged during the objection period, as well as after the Plaintiff filed his Report of Sale.  It is apparent that during the period after Plaintiff filed the Notice of Sale during which parties could object, but before the sale to Korb was consummated, a disagreement emerged between the parties concerning the scope of items which were to be included in the sale.  However, when the parties learned about the existence of the CCF financing statement listing "Wing Fine Foods" as the debtor, Plaintiff took the position with Korb that Plaintiff was legally unable to sell the equipment included in the financing statement until he avoided CCF's security interest in that equipment.  He argued that, in spite of the language in the Notice of Sale and Sales Agreement, those items of equipment would not be part of the sale, and informed CCF and Korb of his position.  In particular, the record shows:

MEMORANDUM OF DECISION - 24

Email from Plaintiff to Korb, dated June 18, 2009:

> I can't agree to the stipulation because the leasing company's documents are fatally flawed. I can change the sale agreement to exclude the [Disputed Property]. I can then attempt to stipulate to lien avoidance and sell the "leased" equipment to you or to someone else. Does your new tenant have a use for it? I can modify the sale agreement and re-notice it today if that is what will work for you. The other "leased" equipment will be subject to a separate agreement. . . .

Email response from Korb to Plaintiff:

> I understand CCF has withdrawn its objection to the sale. Would it be possible to confirm the sale so my tenant can open for business tomorrow? Your assistance is most appreciated.

To which Plaintiff responded:

> What about the items that CCF is claiming an interest in? Are you considering those part of the items sold?

And Korb answered:

> Yes, if that is OK with you.

Docket No. 18, Ex. D.

MEMORANDUM OF DECISION - 25

At this point, Plaintiff reiterated his position that he could not sell

the Disputed Property until he resolved the status of CCF's interest in

those items.  Even so, Plaintiff made no effort to amend the Notice of Sale

or the Sales Agreement to reflect the exclusion of those items, and instead

agreed the sale was final once Defendants' objection was withdrawn.[11]

Moreover, despite Plaintiff's continuing assertion that the Disputed

Property was not included in the sale, on July 1, 2009, Plaintiff filed the

Report of Sale confirming again that he had sold to Korb "[a]ll property

remaining at the former business location of Wing Foods, Inc."  BK Docket

No. 31.  Apparently acting on his impression that he had not sold the

Disputed Property, Plaintiff thereafter commenced this adversary

proceeding to avoid CCF's interest in those items.

The Court concludes that while the emails discussed the scope of

the items to be sold by Plaintiff to Korb, those communications never

---

[11]  It later came to light that, apparently to solve the problem of the
lien and remove Defendants' objection to the sale, Korb made a side deal
with CCF to transfer the Disputed Property back to it, in exchange for
withdrawal of the objection to the sale between Plaintiff and Korb.

MEMORANDUM OF DECISION - 26

finally resolved the details concerning what property was to be purchased

and sold.  In the emails, Plaintiff acknowledged that, in light of CCF's

apparent interest in several items (as either a lessor or the holder of a

security interest), Plaintiff should amend the Notice of Sale and Sales

Agreement to reflect  this change.  But Plaintiff never did modify either the

Sales Agreement or Notice of Sale, even though he steadfastly maintained

that the Disputed Property was not part of the sale.  And despite his

contention, he later, inexplicably, filed a Report of Sale, again using the

sweeping language from the Notice of Sale regarding what he had sold.[12]

It is clear that much discussion took place, offers were made and

---

[12]  As a side note, the Court reiterates that documents and pleadings filed
by Plaintiff, and all litigants in a bankruptcy case, are not perfunctory, nor are
they mere formalities.  The Court considers all pleadings filed in a bankruptcy
case to be accurate, and parties should expect to be bound by the positions
expressed in those documents unless they provide otherwise.  The Notice of Sale
and Report of Sale provide notice to parties in the bankruptcy case concerning
what is transpiring in the case, and those parties rely upon that information.  In
other words, Plaintiff should not expect to file an official pleading which
indicates that he sold all of the Disputed Property to Korb, only later to come into
Court and argue the parties actually agreed to something different.  The integrity
of the bankruptcy process would be at risk if parties could cavalierly disregard
the contents of their pleadings.

MEMORANDUM OF DECISION - 27

rejected, and various resolutions and pathways for going forward were

explored.  Yet in the end, the record is devoid of evidence that the parties

intended to modify the the Sales Agreement between Plaintiff and Korb.

In short, the Court concludes that none of the extrinsic evidence supplants

the "superior probative value" of the merger clause written into the Sale

Agreement, and agreed to by the parties.

### b.  Consistent Additional Terms.

Even if the email stream indicated an agreement to remove the

Disputed Property from the scope of the Sales Agreement, such agreement

would still run afoul of the parol evidence rule.  On its face, that rule only

allows evidence of "consistent additional terms" to those in the contract,

and clearly any agreement limiting the items to be sold would be

inconsistent with "[a]ll property [of Debtor] remaining" at the business

premises.

Accordingly, due to the lack of extrinsic evidence that the parties

did not intend the Sales Agreement to be the final word, the fact that the

merger clause is evidence in favor of complete integration, and the long-

MEMORANDUM OF DECISION - 28

held legal understanding that ambiguities within contracts are construed

against the drafter, in this case Plaintiff, *Freeman & Co. v. Bolt*, 968 P.2d 247,

251 (Idaho Ct. App. 1998), the Court concludes that the Sales Agreement is

to be read according to its terms only.  *See also Haener v. Ada County*

*Highway Dist.*, 697 P.2d 1184, 1187 (Idaho 1985) (ambiguous contract terms

are construed in favor of the non-drafting party).  As a result, the Court

declines to consider parol evidence of any contemporaneous agreements

the parties may have made concerning the scope of the property to be sold.


Having reached the legal conclusion that the parties are bound by

the terms of the Sales Agreement, the Court may return to the critical

question: "What property did Plaintiff sell?"

Pursuant to § 363(b)(1) (granting trustee authority, after notice and

hearing, to sell property of estate), Plaintiff had the right to sell any

property of the bankruptcy estate.  As plainly stated in the Notice of Sale,

the Sales Agreement, and the Report of Sale, Plaintiff sold to Korb "all

interests of the bankruptcy estate in and to:  All property remaining at the

MEMORANDUM OF DECISION - 29

former business location of Wing Foods, Inc." It is undisputed that the

Disputed Property was located at the former business premises of Wing

Foods, Inc. at the time of the sale. Thus, Plaintiff sold, and Korb acquired,

all of the estate's interest in the Disputed Property pursuant to the Sales

Agreement.

      B.  Disposition of § 502(d) Issue.

      As noted above, § 502(d) provides a measure of coercion to support

bankruptcy trustees in the event an entity is ordered to return property to

the estate and fails to do so. While CCF admittedly did not return the

Disputed Property to Plaintiff, it was because Plaintiff sold all of the

estate's interest in the Disputed Property to Korb, and Korb in turn sold it

to CCF. As a result of the sale, the bankruptcy estate has no residual

interest in the Disputed Property which Plaintiff may recover from CCF.

Because Plaintiff may not avoid the interest in the Disputed Property that

CCF purchased from Korb, § 502(d) is inapplicable under these

circumstances, and will not operate to disallow CCF's creditor's claim.

Defendants' motion for summary judgment will be granted on this issue,

MEMORANDUM OF DECISION - 30

and Plaintiff's motion will be denied.


### *Conclusion*

Because the Court concludes, as a matter of law, that the Agreement
is not a true lease, but instead establishes a security interest on behalf of
Defendants, summary judgment is granted to Plaintiff, and denied to
Defendants, on this issue.

Plaintiff seeks to avoid CCF's security interest pursuant to § 544 and
to recover the Disputed Property so he can sell it for the benefit of the
creditors of the bankruptcy estate.  The Court again can discern no
material facts in dispute, and concludes, as a matter of law, that Plaintiff
may avoid CCF's security interest in the Disputed Property, as the
financing statement was fatally flawed.  As a result, CCF holds an
unsecured creditor's claim in Debtor's bankruptcy case, and CCF is not
entitled to  proceeds of the sale of the Disputed Property.   Summary
judgment is therefore granted to Plaintiff, avoiding CCF's interest in the
Disputed Property; Defendants' motion is denied on this issue.

MEMORANDUM OF DECISION - 31

However, because the Court concludes that Plaintiff sold all of the

bankruptcy estate's interest in the Disputed Property to Korb, the

bankruptcy estate no longer has an interest in the Disputed Property, and

Plaintiff has no right to recover or sell these items.  Because CCF holds no

property that can be recovered by Plaintiff, he may not invoke § 502(d) to

disallow CCF's claim.  Accordingly, summary judgment granted in favor

of Defendants' on this issue, and Plaintiff's motion will be denied.

A separate order will be entered.[13]

Dated:  January 14, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

_____

[13]  The Court presumes these determinations fully resolve all claims and issues in this action.  To be prudent, however, the Court will schedule this action for a status conference.  In the event the parties believe no further proceedings before this Court are required, they may jointly submit an approved form of final judgment for entry, and the status conference will be vacated.

MEMORANDUM OF DECISION - 32